IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY R. WINFIELD,  )
  ) Civil Action No. 11 - 584
  Plaintiff,  )
  ) Chief Magistrate Judge Lisa Pupo Lenihan
  v.  )
  ) ECF No. 29
JOSEPH F. MAZURKIEWICZ, *et al*.,  )
  )
  Defendants.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony R. Winfield, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 alleging that Defendants violated his rights as protected under the Eighth and Fourteenth Amendments of the United States Constitution while he was incarcerated at the State Correctional Institution at Greensburg ("SCI-Greensburg"). *See* ECF No. 3. Plaintiff names as Defendants: Superintendent Joseph F. Mazurkiewicz, Lieutenant Kolesar, and Corrections Officers Bunch, Phillips, and Reilly.[1] Defendants have filed a Motion for Summary Judgment (ECF No. 29), a Brief in Support thereof (ECF No. 31), and a Concise Statement of Material Facts ("CSMF") (ECF No. 30). Plaintiff filed a Response in Opposition to Defendants' Motion (ECF No. 36) and a Response to Defendants' CSMF (ECF No. 37).

### A. Factual Background

In their entirety, the factual allegations of the Complaint are as follows:

---

[1] CO Reilly is incorrectly identified in Plaintiff's Complaint as "Relic."

1

> While during a Institutional lockdown shake down. I was assault by these three guard, Bunch, Relic, and Phillip while I was shackle, handcuff, and on the ground they kick, punch, twisted arms, legs, wrist. Hit in face with fist knees and boots twice once out in front of other prisoner and after drug to another cell out of view. I sustain multiply bruise on face, wrist, kneck with abrasion in other cuts. While the Superintendent Mr. Mazurkiewicz and the Lt. Kolesar allow these three guards to assault part of my body in cuffs, shackles, and face mask.

(ECF No. 3 at 2-3.)

**1. Local Rule 56 Violation**

As noted above, Defendants submitted a CSMF (ECF No. 30) in support of their Motion for Summary Judgment to which Plaintiff responded disputing in part (ECF No. 37). However, because Plaintiff failed to cite to any evidence of record in his Response to Defendants' CSMF in violation of Local Rule 56,[2] Defendants filed a Reply Brief asserting that all factual averments contained in their CSMF should be deemed admitted for purposes of summary judgment. (ECF No. 38 at ¶ 5.)

On August 21, 2012, the Court ordered Plaintiff to file a Response to Defendants' Motion for Summary Judgment and CSMF in compliance with Local Rule 56 and Federal Rule of Civil Procedure 56. (ECF No. 39.) Plaintiff was advised that if he failed to comply within the time allowed then all facts contained within Defendants' CSMF would be deemed undisputed for purposes of summary judgment. (ECF No. 39.) Plaintiff filed nothing in response.

---

[2] The Local Rules of the United States District Court for the Western District of Pennsylvania require that a party opposing a motion for summary judgment file a responsive "concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by : (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety . . . **with appropriate reference to the record**; and (c) setting forth . . . any other material facts that are allegedly at issue and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment." L.R. 56.C.1 (emphasis added). Moreover, pursuant to Local Rule 56.E, alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party. *See* Emigh v. Miller, No. 08-1726, 2010 U.S. Dist. LEXIS 74414, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases).

The Third Circuit Court of Appeals has traditionally given *pro se* litigants "greater leeway where they have not followed the technical rules of pleading and procedure." Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Due to the "understandable difference in legal sophistication," a *pro se* litigant must be held to a less exacting standard than trained counsel. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). In the context of summary judgment, the Court of Appeals has recognized that "an inmate who is proceeding *pro se*, is in a decidedly difficult position from which to generate 'record evidence' on his behalf." Smith v. Mensinger, 293 F.3d 641, 646 n.4 (3d Cir. 2002) (citing Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000)). However, "while *pro se* complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment." Ezeiruaku v. United States, No. 00-2225, 2000 U.S. Dist. LEXIS 17046, 2000 WL 1751077, at *3 (E.D. Pa. Nov. 29, 2000) (citing Shabazz v. Odum, 591 F. Supp. 1513, 1515 (M.D. Pa. 1984)). Thus, notwithstanding giving a *pro se* litigant every opportunity to functionally respond in some meaningful way to a summary judgment motion and the Court's liberal construction of Plaintiff's submissions as a *pro se* litigant, the same standards for summary judgment still apply. Agogbua v. Abington Memorial Hospital, No. 03-6897, 2005 U.S. Dist. LEXIS 43818, 2005 WL 1353612, at *3 (E.D. Pa. May 31, 2005); *see also* Tunnell v. Wiley, 514 F.2d 971, 976 (3d Cir. 1975) ("Where th[e] opportunity to supplement the record is ignored, summary judgment for the movant who has carried his burden of proof is appropriate.") (citing, *inter alia*, First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968); Tripoli Co., Inc. v. Wella Corp., 425 F.2d 932, (3d Cir. 1970)).

In this case, Plaintiff did not attach any exhibits to his Complaint nor did he submit any record evidence on his behalf to support his claims. In fact, Plaintiff did not so much as submit

an affidavit from himself or a fellow inmate attesting to the facts contained in his Complaint. The record consists solely of the exhibits filed by Defendants in support of their Motion for Summary Judgment. Although Plaintiff filed a Response in Opposition to Defendants' Motion and a Response to their CSMF, he filed no evidentiary material and did not cite to any evidence of record to support his assertions. Furthermore, despite being given a second opportunity, Plaintiff still did not do so.

Although Plaintiff's filings are entitled to liberal construction, he still must set forth facts sufficient to survive summary judgment. However, Plaintiff's allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to defeat a properly supported motion for summary judgment. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing First National Bank of Arizona, 391 U.S. at 290). Because the Court has already given Plaintiff "an opportunity to properly support or address the fact[s]" in Defendants' CSMF of which he disputes and he failed to respond accordingly, the Court will now consider Defendants' CSMF undisputed for purposes of the instant Motion. *See* Fed. R. Civ. P. 56(e)(1)&(2); *see also* Cuevas v. United States, No. 09-43J, 2010 U.S. Dist. LEXIS 42115, 2010 WL 1779690, at *1 (W.D. Pa. Apr. 29, 2010) ("Plaintiff's response to Defendant's Motion does not contain any basis for any . . . denial of a fact and also fails to reference the record for each such denial. Though this Court must give certain latitude to a *pro se* litigant, it is not for the Court to sort through the entire record to determine the basis of an alleged disputed fact. As Plaintiff has failed to comply with our local rules, Defendant's Statement of Facts as set forth in [its Concise Statement of Material Facts] are admitted as true and correct.").

2. **Facts**

The Facts as they are stated in Defendants' CSMF are as follows:

On January 18, 2011, Plaintiff was removed from his cell in the Restricted Housing Unit ("RHU") at approximately 1:10 p.m. in order for the CERT team to conduct a cell search. (ECF No. 30, ¶¶ 1-3.) Corrections Officer Rhoades and Defendant Phillips were responsible for securing Plaintiff while his cell was searched. (ECF No. 30, ¶ 4.) Defendants Bunch and Reilly were also participating and Corrections Officer Richards was assigned to operate the handheld camera. (ECF No. 30, ¶ 5.) Defendants Kolesar and Mazurkiewicz were also generally present during portions of the search of FA block, although Superintendent Mazurkiewicz had no hands-on role. (ECF No. 30, ¶ 6.)

According to Defendants, Plaintiff refused numerous direct orders to stay against the wall while his cell was being searched. (ECF No. 30, ¶ 7.) At approximately 1:12 p.m., Plaintiff turned face to face with Defendant Phillips and made an aggressive move towards him with his head while stating "I'll kill you with these cuffs on." (ECF No. 30, ¶¶ 8-9.) As a result, Defendant Phillips and Officer Rhoades took Plaintiff to the ground in order to protect themselves and keep the situation from getting out of control. (ECF No. 30, ¶¶ 9, 11.) Defendants claim that Plaintiff refused at least five direct orders and was generally hostile and combative. (ECF No. 30, ¶ 10.)

Upon witnessing the situation, Defendants Bunch and Reilly went to the area and assisted Defendant Phillips and Officer Rhoades in securing Plaintiff once he was placed on the floor. (ECF No. 30, ¶ 13.) At this point, Officer Richards turned towards Plaintiff's cell and began filming.[3] (ECF No. 30, ¶ 14.) Defendant Kolesar was also notified of the situation, but by the time he arrived Plaintiff was already on the floor. (ECF No. 30, ¶ 15.)

---

[3] Defendants have submitted as an exhibit a copy of the DVD.

Defendants maintain that, while on the floor, Plaintiff refused numerous orders to stop resisting and he continued to be combative – kicking the officers – before being shackled. (ECF No. 30, ¶ 16; No. 37, ¶ 16.) Shackles and a spit hood were applied and Plaintiff was stood up and placed against the wall. (ECF No. 30, ¶¶ 17-18.) At approximately 1:30 p.m., Plaintiff was taken to a neighboring cell and placed on the floor at which time the shackles were removed. (ECF No. 30; ¶ 20-21.) He was then stood up and the officers exited the cell, secured the door, and removed Plaintiff's handcuffs. (ECF No. 30, ¶ 21.)

Nurse Bush assessed Plaintiff at his cell and observed that he had red marks on his wrists that were caused by his pulling against the handcuffs. (ECF No. 30, ¶¶ 23-24.) Nurse Bush also observed that Plaintiff had a small superficial abrasion on his right thumb, approximately 1 cm in diameter, but that it did not exhibit any bleeding or drainage. (ECF No. 30, ¶ 25.) Plaintiff told the nurse that he felt as if he scratched both sides of his face, but no scratches or red marks were observed. (ECF No. 30, ¶ 26.) Pictures were taken and Officer Richards continued filming until after Plaintiff was seen by Nurse Bush and secured in his cell. (ECF No. 30, ¶¶ 27-28.) Later that same day, Nurse Robinson was called to the RHU because Plaintiff was complaining of a bump on the side of his face. (ECF No. 30, ¶ 29.) She examined him at approximately 4:40 p.m. and observed that Plaintiff had no swelling or visible injury to his face and that he was able to move his mouth without difficulty or pain. (ECF No. 30, ¶¶ 29-30.)

Because of his behavior, Plaintiff received a misconduct, which included charges of verbal threats and physical assaults. (ECF No. 30, ¶ 31.) He was sanctioned to 180 days of disciplinary confinement upon being found guilty of assault, refusing to obey an order, and threatening an employee or their family with bodily harm. (ECF No. 30, ¶ 32.) Plaintiff filed a grievance regarding the incident, at which point an investigation was conducted and it was

determined that the officers involved used an appropriate amount of force to restrain him. (ECF No. 30, ¶ 33.)

Defendants maintain that at no time during the incident in question did any of the officers punch, kick, stomp on, stand on, or otherwise strike Plaintiff and that the officers used only the force necessary to keep the situation under control and protect everyone involved. (ECF No. 30, ¶¶ 34-41.) They further maintain that the roles of Defendants Kolesar and Mazurkiewicz in the situation were only supervisory and that they did not see any force that was inappropriate or feel the need to intervene in the situation. (ECF No. 30, ¶¶ 42-48.)

### B. Summary Judgment Standard

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every

7

essential element of his case. Id. at 322. Thus, he is required to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324.

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### C. Discussion

Plaintiff's Complaint contains two claims: (1) an excessive force claim against Defendants Bunch, Phillips, and Reilly; and (2) a failure to intervene claim against Defendants Kolesar and Mazurkiewicz.

1. **Excessive Force**

Under the Cruel and Unusual Punishments Clause of the Eighth Amendment, inmates are protected against the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 219 (1986). In the context of an excessive force claim, the core judicial inquiry of whether the measure taken inflicted unnecessary and wanton pain and suffering is that set out in Whitley:

8

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Although the Eighth Amendment protects inmates against cruel and unusual punishment, it "does not protect an inmate against an objectively *de minimis* use of force." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.

In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotations and citation omitted). The extent of any injuries that an inmate suffers is relevant, but "does not end" this analysis. Hudson, 503 U.S. at 7. Consideration of these factors permit a court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "Summary judgment in favor of a defendant is not appropriate if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106 (citing Whitley, 475 U.S. at 322.)

Plaintiff claims that Defendants Bunch, Phillips, and Reilly assaulted him during the cell search by kicking, punching, and twisting his arms, legs, and wrists while he was handcuffed,

shackled, and on the ground. Defendants rely, in part, on the DVD of the incident in question to support their position that Plaintiff's version of events is incorrect and that the officers involved used necessary and reasonable force under the circumstances. A review of the DVD clearly shows that the officers did not utilize excessive force from the point when Officer Richards began filming the incident.[4]

The video starts with Plaintiff already on the floor, with several officers attempting to restrain him. Plaintiff is restrained with leg irons (shackles) and a spit hood is placed on him. According to Defendants, handcuffs were already applied prior to the incident. Plaintiff is then stood up and placed against the wall while the officers search his cell. During this time, Defendants Bunch, Phillips, and Reilly use force to hold Plaintiff against the wall while he attempts to turn around. Plaintiff is eventually placed on the ground in another cell and the shackles are removed. The officers stand him up, exit the cell, secure the door, and remove his handcuffs. Plaintiff is assessed for injuries by Nurse Bush. He is seen to have red marks on his wrists, presumably caused by the handcuffs. Nurse Bush then states that he observes no scratches on Plaintiff's face after Plaintiff complains of such.

Upon review of the DVD and examining the circumstances of this case under the appropriate factors, it is clear that the force applied was not so excessive as to exceed Eighth Amendment limitations. During the portion of the incident that was caught on video, at no time

---

[4] It appears from Plaintiff's Complaint that he does not make any allegations of excessive force with respect to what occurred prior to the incident being recorded. Indeed, Plaintiff claims that he was assaulted by Defendants Bunch, Phillips, and Reilly *while he was shackled and on the ground*, the events of which were recorded in their entirety as the filming began prior to the officers placing shackles on Plaintiff's legs. Nevertheless, Plaintiff has failed to point to any evidence in the record showing that there is a genuine issue for trial as to any excessive use of force that allegedly occurred prior to the incident in question being recorded. In the absence of evidentiary support, the Court is left to conclude that any such claim would be unsubstantiated, and therefore fails to create a genuine issue of fact that would otherwise preclude summary judgment.

did Defendants Bunch, Phillips, and Reilly, or any officer for that matter, hit, kick, stomp, or otherwise strike Plaintiff as he suggests. Instead, the DVD clearly indicates that the force used by the officers to restrain Plaintiff once on the ground and then subsequently throughout the remainder of the incident was minimal, at most, and applied in a good-faith effort to maintain and restore discipline. As instructed by the Supreme Court, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." Whitley, 475 U.S. at 321-22. Here, Plaintiff's allegations are discredited by the DVD and the record evidence, including the medical evidence, which fails to show force applied maliciously or sadistically to cause harm.[5] Indeed, the evidence in this matter indicates that the use of force was objectively *de minimis* and insufficient to establish an Eighth Amendment violation. No rational trier of fact could view the video footage and find for Plaintiff in this case. Consequently, Defendants Bunch, Phillips, and Reilly are entitled to summary judgment as to this claim.

**2. Failure to Intervene**

The Third Circuit Court of Appeals has recognized that the failure of a corrections officer to intervene in certain acts, such as an unjustified use of force, "can be the basis of liability for an Eighth Amendment violation under § 1983 . . . ." Smith, 293 F.3d at 650. That court went on further to state that

---

[5] "Although not dispositive, [a] [p]laintiff's injuries are relevant to determining if excessive force was used against [him]." Thomas v. Ferguson, 361 F. Supp. 2d 435, 438 (D. N.J. 2004) (citing Brooks, 204 F.3d at 108). "[T]he degree of resulting injury [can be] highly relevant to the determination of the unreasonableness of the force used. . . ." Brooks, 204 F.3d at 108. Nurse Bush found that Plaintiff had red marks on his wrists caused by pulling against the handcuffs and a small superficial abrasion to his right thumb about one centimeter in diameter with no bleeding or drainage. Plaintiff complained of scratches on his face but Nurse Bush observed no red marks or scratches. When Plaintiff was later assessed by Nurse Robinson after he complained of a bump on his face, she observed no swelling or visible injury.

> [t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force. It is incompatible with the restrictions imposed under the Eighth Amendment, and is therefore unacceptable. We will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation and escape responsibility for it. The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs.

Id. at 651. Consequently, the failure or refusal to intervene in another officer's assault on an inmate will create direct liability for the non-intervening officer who did not physically participate in an excessive use of force. Id. at 650-51.

However, in order for liability to attach under section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." Smith, 293 F.3d at 651; *see also* McCullough v. Miller, No. 06-514, 2008 U.S. Dist. LEXIS 112342, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008). In determining whether an opportunity to intervene existed, courts take into account many factors, "including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc." McCullough, 2008 U.S. Dist. LEXIS 112342, 2008 WL 4361254, at *9 (citing Swinyer v. Cole, No. C04-5348, 2006 U.S. Dist. LEXIS 48043, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); Mitchell v. Little, No. 4:04CV1068, 2006 U.S. Dist. LEXIS 3140, 2006 WL 212214, at *5 (E.D. Mo. Jan 27, 2006)).

Plaintiff claims that Defendants Mazurkiewicz and Kolesar failed to intervene in the alleged use of excessive force. However, for there to be a failure to intervene, it follows that "there must exist an underlying constitutional violation." Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005); *see also* Sanders v. City of Union Springs, 207 F. App'x 960, 965-66 (11th Cir. 2006). Here, there was no duty to intervene on the part of Defendants Mazurkiewicz and Kolesar because there was no unconstitutional use of force. As such, Defendants Mazurkiewicz and Kolesar are entitled to summary judgment.

**AND NOW**, this 21st day of September, 2012;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Anthony R. Winfield
GX6771
2237 Bryn Manor
Apt 209
Philadelphia, PA  19131

Counsel of record.